IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JANELLE FERRELL and UMAR A. AHMAD, | ) |
| Plaintiffs, | ) |
| v. | ) Civ. No. 10-205-SLR |
| COMMUNITY MANAGEMENT SERVICES, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 6th day of May 2011, having reviewed defendant's motion for judgment on the pleadings and the papers filed in connection therewith;

IT IS ORDERED that defendant's motion (D.I. 14) is denied, for the reasons that follow:

1. **Background.** This is an action for damages under the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692 et seq. Generally, the FDCPA proscribes abusive, deceptive and unfair debt collection practices by debt collectors and allows actual damages and costs to be awarded against any debt collector who fails to comply with its provisions. See 15 U.S.C. §§ 1692; 1692(k). Plaintiffs allege in the present suit that in 2009, defendant utilized deceptive and harassing tactics in its attempts to collect "homeowners assessments" owed by plaintiffs on behalf of Chaddwyck Maintenance Corporation. (D.I. 1 at ¶ 14) Plaintiffs claim that the debt arose from a 2008 assessment on their condominium in the Chaddwick development, which debt was actually paid 30 days following the due date on May 27, 2008. (Id. at ¶

15, D.I. 15 at 15) Nevertheless, defendant made letter demands threatening legal action against plaintiffs and potential foreclosure of their property unless they paid the disputed amount.¹ (D.I. 1 at ¶¶ 19-20) On one occasion, defendant's employee personally approached plaintiffs at their home to request payment, which plaintiffs found to be embarrassing.² (*Id.* at ¶ 17)

2. **Standard**. Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The court analyzes a Rule 12(c) motion for judgment on the pleadings based on an allegation that the plaintiff has failed to state a claim "under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010), cert. denied, —— U.S. ——, 131 S.Ct. 995 (Jan. 18, 2011). That is, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the

---

¹The parties do not appear to state what the amount in question was, but plaintiffs allege in the complaint that defendant attempted to collect an amount in "excess of what was provided in the agreement between plaintiffs and the homeowner's association, which was 12% per annum on [an] unpaid amount." (D.I. 1 at ¶ 21)

²The complaint generally states that a third party was present at the conversation. Defendant states in its reply papers that this was plaintiffs' young grandson.

2

'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

3. **Discussion**. The sole issue presented by defendant's motion is whether a debt arising from a "homeowner's assessment," as described in the complaint, is considered a "debt" as defined by the FDCPA, or an obligation "arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes."[3] 15 U.S.C. § 1692(a)(5). In support, defendant relies on Third Circuit precedent that tax obligations do not constitute "debts" under the FDCPA. *See Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 401-02 (3d Cir. 2000); *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980). In *Staub,* the Third Circuit explained that, "at a minimum, the [FDCPA] contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value. The relationship between taxpayer and taxing authority does not

---

[3]Although defendant asserts that it is not a "debt collector" under the FDCPA (but a "management company"), it concedes that this determination is a factual issue not properly brought in the motion at bar.

encompass the type of *pro tanto* exchange which the statutory definition [of 'debt'] envisages." *Staub*, 626 F.2d at 278. The *Pollice* Court refined the *Staub* analysis to distinguish property tax obligations from other taxes, explaining that such obligations are "debts" because they arise out of the "transaction" in which each property owner acquired his or her property. 275 F.3d at 402 ("Unlike a sales tax, for example, which arguably arises from the sale transaction, the property taxes at issue here arose not from the purchase of property but from the **fact of ownership**.") (emphasis in original).

4. While defendant urges the court that there is "no appreciable difference between homeowner association dues and municipal property taxes. . . because the tax or fee is simply a result of owning property in a particular city or neighborhood" (D.I. 16 at ¶ 5), it does not provide any caselaw in support of this proposition. By contrast, as plaintiffs point out, several courts considering the legal issue at bar have held that assessments owed to a homeowners or condominium association qualify as a "debt" under the FDCPA. *See Ladick v. Van Gemert*, 146 F.3d 1205, 1206 (10th Cir. 1998) ("[T]he obligation to pay a condominium assessment arises in connection with the purchase of the condominium itself") (following *Newman v. Boehm, Pearlstein & Bright, Limited*, 119 F.3d 477, 481 (7th Cir. 1997), cert. denied, 525 U.S. 1002 (1998)); *Wright v. Bush Ross, P.A.*, Civ. No. 07-1885, 2008 WL 190466, *2 & n.7 (M.D. Fla. Jan. 18, 2008) (collecting cases).

5. The court joins these federal courts in finding that homeowners or condominium assessments qualify as a "debt" as contemplated by the FDCPA. As stated by the Seventh Circuit in *Newman*:

> [T]he relevant transactions in these cases were the purchase of the family homes, and on that general level, there can be little doubt that the subject of those transactions had a personal, family, or household purpose. More specifically, however, we also believe that the assessments themselves satisfy that statutory requirement. To the extent that the assessments were to be used to improve or maintain commonly-owned areas, that purpose, too, qualifies as "personal, family, or household." In our view, when a special assessment is used to repair a common roof, or a monthly assessment is used to pay for services like snow removal from a common walkway or landscaping of a common yard, the assessments are for a household purpose even if more than a single household benefits. We thus are unable to agree with defendants' suggestion that because all unit owners benefit, assessments like these can be likened to past-due tax obligations, which are not considered "debts" under the Act because they generally are used for communal rather than personal, family, or household purposes. *See Staub v. Harris*, 626 F.2d 275, 278 (3d Cir.1980)[.] The assessments here have a more specific household purpose than taxes collected by a governmental entity. Rather than generally providing for government services, these assessments are collected in order to improve and maintain commonly-owned areas used by each unit owner. The assessments thereby directly benefit each household in the development. As a result, the assessments have a "personal, family, or household purpose."

119 F.3d at 481-82 (last citation omitted). While the Third Circuit does not appear to have weighed in on this issue, the court finds the rationale of *Newman* and its progeny convincing.

_____
United States District Judge